UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| JILIN BRIGHT FUTURE CHEMICALS CO., LTD., | ) |
| | ) **PUBLIC DOCUMENT** |
| Plaintiff, | ) |
| and | ) |
| | ) |
| NINGXIA GUANGHUA CHERISHMET ACTIVATED | ) |
| CARBON CO., LTD. AND DATONG MUNICIPAL | ) |
| YUNGUANG ACTIVATED CARBON CO., LTD., | ) |
| | ) |
| Plaintiff-Intervenors, | ) Court No. 22-00336 |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| CALGON CARBON CORPORATION | ) |
| AND NORIT AMERICAS, INC. | ) |
| | ) |
| Defendant-Intervenors. | ) |

PLAINTIFF JILIN BRIGHT'S REPLY TO DEFENDANT'S RESPONSE TO
JILIN BRIGHT'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Jonathan M. Freed
Doris Di
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  October 24, 2023                              *Counsel to Jilin Bright*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................2

   A.   Jilin Bright Did Not Fail To Exhaust Its Challenge To Commerce's UHV-TO-GCV
Conversion Formula AT THE administrative level ...............................................2

   B.   Commerce's Selection Of The Surrogate Value Based Upon Malaysian Import DATA
Under HTS 2701.12 for Jilin Bright's COAL Was Not Supported by Substantial Evidence
in the Administrative Record ..........................................................................5

      1.   Defendant Mischaracterized The Table "Adapted from Jilin Bright's Third
Supplemental, Exhibit S3-2, C.R. 215" As "New Record" ....................................5

      2.   The Record Evidence Cited By Defendant Does Not Substantiate The Assumption Of
A Five Percent Intrinsic Moisture Value ..........................................................6

      3.   Defendant's Assertion That Substantial Record Evidence Supports Commerce's
Determination Is Unsubstantiated ..................................................................8

   C.   Commerce's Selection Of The Surrogate Value Based Upon Malaysian Import DATA
Under HTS 2706 for Jilin Bright's Coal Tar Was Not Supported by Substantial Evidence in
the Administrative Record ............................................................................11

III.   CONCLUSION ...................................................................................................14

## TABLE OF AUTHORITIES

<u>**Cases**</u>

Boomerang Tube LLC v. United States, 856 F.3d 908 (Fed. Cir. 2017)...................................2

Qingdao Taifa Group Co., Ltd. v. United States, 637 F. Supp. 2d 1231 (Ct. Int'l Trade 2009)
............................................................................................................................................3, 4

Zhaoqing Tifo New Fibre Co., Ltd. v. United States, 60 F. Supp. 3d 1328 (Ct. Int'l. Trade
2015) ...............................................................................................................................4

LTV Steel Co. v. United States, 985 F. Supp. 95 (CIT 1997) ....................................................4

Jacobi Carbons AB v. United States, 992 F. Supp. 2d 1360, 1366 (Ct. Intl. Trade 2014), <u>aff'd</u>,
619 Fed. Appx. 992 (Fed. Cir. 2015) .......................................................................................4

Camp v. Pitts, 411 U.S. 138 (1973) ...........................................................................................5

Nippon Steel Corp. v. United States, 458 F.3d 1345 (Fed. Cir. 2006). ....................................9

Universal Camera Corp. v. NLRB., 340 U.S. 474 (1951) .........................................................9

Blue Field (Sichuan) Food Industrial Co., Ltd. v. United States, 949 F. Supp. 2d 1311 (Ct.
Int'l Trade 2013) ...............................................................................................................9, 10

Taian Ziyang Food Co., Ltd. v. United States, 35 C.I.T. 863 (Ct. Int'l. Trade 2011) .......10, 12

NMB Singapore Ltd. v. United States, 557 F.3d 1316 (Fed. Cir. 2009). ...............................10

Timken U.S. Corp. v. United States, 421 F.3d 1350 (Fed.Cir.2005)......................................10

Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States, 268
F.3d 1376 (Fed. Cir. 2001) ............................................................................................11, 12

Micron Tech., Inc. v. United States, 117 F.3d 1386 (Fed.Cir.1997) ................................11, 12

Lasko Metal Products, Inc. v. United States, 43 F.3d 1442 (Fed.Cir.1994)...........................12

Ningbo Dafa Chem. Fiber Co., Ltd. v. United States, 580 F.3d 1247 (Fed. Cir. 2009) ..........12

**Administrative Determinations**

Certain Activated Carbon From the People's Republic of China, 87 Fed. Reg. 67,671 (Dep't
    Commerce, Nov. 9, 2022) and accompanying Issues and Decision Memorandum for the
    Final Results of the 2020-2021 Antidumping Duty Administrative Review (Dep't of
    Commerce, Nov. 2, 2022) ....................................................................................... 1, 3, 8, 11

Certain Activated Carbon From the People's Republic of China: Preliminary Results of
    Antidumping Duty Administrative Review, Preliminary Determination of No Shipments;
    2020–2021, 87 Fed. Reg. 27,094 (Dep't Commerce, May 6, 2022) and accompanying
    Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative
    Review: Certain Activated Carbon from the People's Republic of China; 2020-2021 (Dep't
    of Commerce, Apr. 29, 2022) ............................................................................................ 2, 3

**REPLY BRIEF**

## I.    INTRODUCTION

Plaintiff Jilin Bright Future Chemicals Co. Ltd. ("Jilin Bright" or "Plaintiff") hereby replies to Defendant's Response To Plaintiff's and Plaintiff-Intervenors' Motions For Judgment Upon The Agency Record, August 28, 2023, ("Def.'s Resp. Br.").

This action is an appeal from the U.S. Department of Commerce's ("Commerce") final results of the fourteenth administrative review in <u>Certain Activated Carbon From the People's Republic of China</u>, 87 Fed. Reg. 67,671 (Dep't Commerce, Nov. 9, 2022) ("<u>Final Results</u>"), PD 351, and accompanying Issues and Decision Memorandum for the Final Affirmative Determination in the Issues and Decision Memorandum for the Final Results of the 2020-2021 Antidumping Duty Administrative Review (Dep't of Commerce, Nov. 2, 2022), available at https://access.trade.gov/public/FRNoticesListLayout.aspx (last accessed May 10, 2023) ("<u>IDM</u>"), PD 345.[1]

Jilin Bright raised two issues in its moving brief:  (1) whether Commerce's determination to value Jilin Bright's coal using import statistics into Malaysia under harmonized tariff schedule ("HTS") classification 2701.12 rather than Malaysian HTS 2701.19 was supported by substantial evidence,  (2) whether Commerce's determination to value Jilin Bright's coal tar pitch using the average unit value of Malaysian imports of HTS 2706 was supported by substantial evidence. <u>See</u> Memorandum In Support of Motion For Judgment Upon The Agency Record, May 25, 2023 ("Jilin Bright's Br.").

---

[1] Throughout this brief, citations to the public record are referenced "PD __" and citations to the confidential record are referenced "CD __."

## II.   ARGUMENT

### A.  JILIN BRIGHT DID NOT FAIL TO EXHAUST ITS CHALLENGE TO COMMERCE'S UHV-TO-GCV CONVERSION FORMULA AT THE ADMINISTRATIVE LEVEL

Defendant argues that Jilin Bright may not raise the argument regarding Commerce' use of formula "GCV = (UHV + 3645 – 75.4M) / 1.466," in which 3645 is a constant and M is an inherent moisture level of five percent, because Jilin Bright failed to exhaust administrative remedies regarding the correct formula to calculate the calorific value limit of its bituminous coal.  Def.'s Resp. Br. at 12.  Specifically, Defendant argues, citing Boomerang Tube LLC v. United States, 856 F.3d 908 (Fed. Cir. 2017), that Jilin Bright had notice that Commerce would evaluate the correct formula to convert UHV to GCV in the final results, but did not raise in its case brief any of arguments challenging the formula GCV = (UHV + 3645 – 75.4M) / 1.466, thus failed to exhaust administrative remedies with respect to Commerce's chosen formula to convert UHV values to GCV values.  See Def.'s Resp. Br. at 13–16.

Jilin Bright did not fail to exhaust its administrative remedies at Commerce because Commerce did not determine to use the formula GCV = (UHV + 3645 – 75.4M) / 1.466 until its decision in the Final Results and Jilin Bright did not have a full and fair opportunity to challenge to Commerce's chosen formula at the administrative level.

In the April 29, 2022 Preliminary Results, Commerce noted that the mandatory respondents provided the formula for the Useful Heat Value ("UHV") and test reports showing the moisture, ash, and volatile matter content.  Certain Activated Carbon From China, 87 Fed. Reg. 27,094 (Dep't of Commerce, May 6, 2022) ("Preliminary Results"), PD 304, and the accompanying Preliminary Decision Memorandum (Apr. 29, 2022), at 26 ("PDM"), PD 299.  Meanwhile, Commerce noted the petitioners' argument alleging that Commerce should use the Gross Calorific Value ("GCV"), rather than UHV, as the measurement for the heat value.  PDM

at 26.  Commerce further explained that considering the petitioners did not provide an explanation of how to derive the bituminous coal heat value using a GCV formula, Commerce was interested in receiving more information regarding the GCV calculation from the parties.  Id. at 27.

Accordingly, at the time of Commerce's preliminary results, Commerce did not make a determination regarding the utilization of UHV or GCV in its computation of the heat value of bituminous coal, nor did it adopt or apply the formula—"GCV = (UHV + 3645 – 75.4M) / 1.466."

Indeed, on June 2, 2022, Commerce issued a supplemental questionnaire instructing Plaintiff to use the formula **GCV = 1.053*UHV**, not the formula it adopted in the Final Results, to produce a table "summarizing the moisture, ash, volatile matter content of the bituminous coal procured from each vendor, and provide the calculated useful heat value and calculated gross calorific value for each test report in the same table."  Letter from Trade Pacific PLLC, "Activated Carbon from the People's Republic of China – Third Supplemental Section D Response" (June 15, 2022) ("Jilin Bright's Third Supp. D Response"), at page S3-2, CD 213–215, PD 320.

In the November 9, 2022 Final Results, Commerce, for the first time, dismissed the mandatory respondents' assertion that the heat value in Note 2 of Chapter 27 in the World Customs Organization Explanatory Notes ("WCO Explanatory Notes") should be determined by Net Calorific Value ("NCV") or UHV.  IDM at 22.  At the same time, also for the first time, Commerce adopted and applied the formula submitted by the petitioners.  Id.

Where a party was not given a fair opportunity to raise a claim during administrative proceedings, the exhaustion doctrine does not preclude the party from raising the claim.  See

<u>Qingdao Taifa Group Co., Ltd. v. United States</u>, 637 F. Supp. 2d 1231, 1237 (Ct. Int'l Trade 2009) (holding that plaintiff lacked a fair opportunity to challenge issues because plaintiff was not required to predict that "Commerce would accept other parties' arguments and change its decision"). The law "does not mandate that litigants be prescient." <u>Zhaoqing Tifo New Fibre Co., Ltd. v. United States</u>, 60 F. Supp. 3d 1328 (Ct. Int'l. Trade 2015). A party can request judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because "in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level." <u>LTV Steel Co. v. United States</u>, 985 F. Supp. 95, 120 (CIT 1997) (holding that the company "did not have the opportunity to challenge Commerce's methodology until Commerce articulated that methodology and applied it to the program at issue"); <u>Qingdao Taifa Group Co., Ltd.</u>, 637 F. Supp. 2d at 1237 (finding that plaintiff was unfairly deprived of the opportunity to challenge issues because Commerce raised those issues after the deadline for case briefs had elapsed); <u>Jacobi Carbons AB v. United States</u>, 992 F. Supp. 2d 1360, 1366 (Ct. Int'l. Trade 2014), <u>aff'd</u>, 619 Fed. Appx. 992 (Fed. Cir. 2015) (concluding that the importers had no realistic opportunity to present any arguments before Commerce regarding the data plaintiffs submitted after the preliminary results because the importers "could hardly foresee what use the Department would make of that data").

Like <u>Qingdao Taifa Group Co.</u> and <u>Jacobi Carbons AB</u>, Plaintiff is not required to predict that Commerce would accept the plaintiffs' arguments and utilize a specific formula suggested by the petitioners in the Final Results because Commerce did not address the issue until its final decision. Following publication of the Preliminary Results, the petitioners placed on the record an article obtained from pdfcoffee.com regarding the calculation of GCV. <u>See</u> Petitioners' Submission of Information to Rebut, Clarify, or Correct DJAC's June 17, 2022 Supplemental

Questionnaire Response, at Exhibit 1 ("pdfcoffee.com Article") (June 24, 2022) ("Petitioners

Post-Preliminary Rebuttal"), PD 324.  While the pdfcoffee.com Article cited by the petitioners

contains a formula for converting GCV from UHV, Plaintiff could hardly foresee what use

Commerce would make of that article, especially considering Commerce's June 2, 2022

supplemental questionnaire requesting information relying on the formula GCV = 1.053*UHV.

Therefore, Plaintiff would not have had a "full and fair opportunity" to raise the challenges to the

suggested formula GCV = (UHV + 3645 – 75.4M) / 1.466 at the administrative level.

Accordingly, Plaintiff should not be precluded from challenging the formula Commerce newly

adopted in its Final Results before the Court.  The Court should find Defendant's exhaustion

claims to be unpersuasive.

**B.  COMMERCE'S SELECTION OF THE SURROGATE VALUE BASED UPON MALAYSIAN IMPORT DATA UNDER HTS 2701.12 FOR JILIN BRIGHT'S COAL WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD**

The Final Results regarding Commerce's selection of Jilin Bright's coal surrogate must

be reversed because (1) Commerce's chosen formula for determining the GCV of Jilin Bright's

coal is flawed, and (2) Commerce relied upon not product specific and aberrational Malaysian

import average unit value ("AUV") under HTS 2701.12 to value Jilin Bright's BITCOAL factor

of production.

**1.  Defendant Mischaracterized The Table "Adapted from Jilin Bright's Third Supplemental, Exhibit S3-2, C.R. 215" As "New Record"**

Defendant claims that the table Plaintiff Jilin Bright adapted from Jilin Bright's Third

Supplemental D Response, Exhibit S3-2, CD 215 should be considered "newly submitted factual

information."  Def.'s Resp. Br. at 16.  However, the information contained in the table is the

"administrative record already in existence."  <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973).

Specifically, the table offered by Plaintiff simply summarizes the results if an intrinsic moisture value of 8.3 percent is assumed in the formula GCV = (UHV + 3645 – 75.4M) / 1.466. Jilin Bright's Br. at 14. The pdfcoffee.com Article cited by the petitioners contains both the formula as well as a moisture value of 8.3 percent. See Petitioners Post-Preliminary Rebuttal, at Exhibit 1, PD 324. Therefore, the Court should continue to consider the table where Plaintiff summarizes the results when an intrinsic moisture of 8.3 percent is assumed in the formula GCV = (UHV + 3645 – 75.4M) / 1.466.

2. **The Record Evidence Cited By Defendant Does Not Substantiate The Assumption Of A Five Percent Intrinsic Moisture Value**

Defendant insists that the 5 percent intrinsic moisture value incorporated in the formula GCV = (UHV + 3645 – 75.4M) / 1.466 was supported by the substantial evidence. Def.'s Resp. Br. at 21. However, the record evidence cited by Defendant is insufficient to substantiate the assumption of a 5 percent intrinsic moisture value.

Defendant initially references "Table 7" in the pdfcoffee.com Article, which mentions "at 5% moisture value." Id. (citing Petitioners Post-Preliminary Rebuttal, at Exhibit 1, page 6, PD 324). While Table 7 in the pdfcoffee.com Article does indeed make reference to "at 5% moisture level," it does not stipulate or imply that "M" should be assumed as having an intrinsic moisture level of 5 percent in the formula GCV = (UHV + 3645 – 75.4M) / 1.466. Table 7 within the pdfcoffee.com Article serves a different purpose altogether. It is presented under the subheading "UHV System Coal Grading System in India," and its primary function is to illustrate the Indian government's method of classifying Indian Non-Coking (NC) coals into seven grades based on the UHV for marketing purposes in India through notifications. Id. Thus, the mention of "at 5% moisture value" in Table 7 is contextually related to this classification system and is not intended to establish an intrinsic moisture value assumption for "M" in the

GCV formula.

Moreover, Defendant highlights other sources in the record that make reference to the "5% moisture level," but these actually refer back to the same source of information.  Def.'s Resp. Br. at 21.  Defendant cites to Petitioners' Resp. to Inquiry, at 2 (May 16, 2022), CD 209, PD 307, which itself cites Petitioners' SV Exhibits, Part I, at Exhibit SVF-I.B.1 (Mar. 31, 2021), PD 251; Datong Juqiang Supp. Sec. D Exhibits, at Exhibit SD-22 (Mar. 18, 2022), CD 102–113, PD 222; Jilin Bright Supp. Sec. D. Resp., at Exhibit SD-7.2 (Mar. 22, 2023), CD 140, PD 226. Id.  All four of these citations point to a common source, which is an article titled "6.Coal Mining & Quarrying" (the "Coalmine Article").  Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Raimondo, 14th Administrative Review of Activated Carbon from the PRC — Petitioners' Final (Day 30) Affirmative Surrogate Value Submission, at Exhibit SVF- I.B.1 (Mar. 30, 2022) ("Petitioners' Final SV Submission").  This article contains the same table that can be found in the pdfcoffee.com Article that mentions "at 5% moisture level."  Id. at Exhibit SVF- I.B.1, page 5.  The formula used to convert UHV to GCV is not mentioned anywhere in the Coalmine Article.  See Id.  Furthermore, the table that includes the notation "at 5% moisture level" is situated under the subheading "grades of non-coking coal."  This table indicates that "at 5% moisture level" might simply denote that the non-coking coal samples were maintained at a 5% moisture level during the process of determining the GCVs for the seven different gradings.

Accordingly, the interpretation that "M" in the formula—GCV = (UHV + 3645 - 75.4M) / 1.466—should be assumed to be at 5 percent is not substantiated by the Coalmine Article, which does not include the formula, and the context in which the "at 5% moisture level" notation is used suggests a different purpose related to the gradings of non-coking coal.

Based on the foregoing analysis, the record evidence cited by Defendant is insufficient to

substantiate Commerce's assumption of a 5 percent intrinsic moisture value.  No other record evidence supports the assumption that the intrinsic moisture level of Jilin Bright's coal is 5 percent.  Thus, Commerce's finding that the inherent moisture level of Jilin Bright's coal is 5 percent was arbitrary and enabled a determination of the GCV of Jilin Bright's coal that was not supported by substantial evidence.

### 3.   Defendant's Assertion That Substantial Record Evidence Supports Commerce's Determination Is Unsubstantiated

In Defendant's response brief, Defendant references Commerce's explanation, stating that "the record lacks sufficient benchmark data or other price information demonstrating that the Malaysian import data reported under HTS 2701.12 are aberrantly high."  Def.'s Resp. Br. at 22–23 (citing IDM at 21).  However, Defendant's conclusion that substantial record evidence supports this determination is unsubstantiated and inadequately supported by its mere reference to Exhibit 3A(i) submitted in DJAC's November 15, 2021 surrogate value comments.  Id. (citing Letter from GDLSK LLP, "DJAC's First Surrogate Value Comments" (Nov. 15, 2021) ("DJAC's First SV Comments"), PD 115).

As shown in Exhibit 3A(i), the Malaysian HTS 2701.12 includes non-coking bituminous coal, or thermal coal, with an AUV of about **$200** per metric ton and coking coal, metallurgical coal, with an AUV of about **$110** per metric ton.  DJAC's First SV Comments, at Exhibit 3A(i), page 3, PD 115.  Meanwhile, Exhibit 3A(i) offers the Turkish import data under HTS 2701.12— including non-coking bituminous coal with an AUV of about **$60** per metric ton and coking coal with an AUV of about **$110** per metric ton.  Id. at Exhibit 3A(i), page 7, PD 115.  Exhibit 3A(i) additionally possesses the Russian import data under HTS 2701.12— including non-coking bituminous coal with an AUV of about **$10** per metric ton and coking coal with an AUV of about **$80** per metric ton.  Id. at Exhibit 3A(i), page 8, PD 115.  The import AUVs under HTS 2701.12

for non-coking and coking coals for Malaysia, Turkey, and Russia are summarized below:

|  | Non-coking Coal ($/MT) | Coking Coal ($/MT) |
|---|---|---|
| Malaysia | 200 | 110 |
| Turkey | 60 | 110 |
| Russia | 10 | 80 |

As shown, the AUV of the Malaysian imports under HTS 2701.12 reflects the exact opposite price correlation compared to the import data of Turkey and Russia included on the OP List.

In Plaintiff's brief, Jilin Bright argued that the Malaysian import AUVs under HTS 2701.12 are anomalous as substantiated by comparison to other benchmarks on the record and by contrasting the AUVs of coking coal and non-coking coal.  See Jilin Bright's Br. at 9–11. Defendant still has not attempted to address this record evidence regarding the unreliability of the Malaysian import data under THS 2701.12 or explained how it is reasonable to rely on this information despite the uncontested information that that coking coal is higher value than non-coking coal.

Commerce "must consider the record as a whole, including evidence which 'fairly detracts from its weight', to determine whether there exists 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (quoting Universal Camera Corp. v. NLRB., 340 U.S. 474, at 477–78 (1951)).

In Blue Field (Sichuan) Food Industrial Co., Ltd. v. United States ("Blue Field"), the Court explained the importance of benchmarking data for determining the reliability of surrogate values:

> Commerce may also review "benchmark" data to ensure the surrogate values it
> selects are reasonable.  A benchmark is a product whose price roughly correlates

> with the price of an input assigned a surrogate value. Unlike surrogate values, however, benchmarks need not reflect the actual price of the inputs into foreign merchandise. Furthermore, benchmark data need not come from an economy comparable to the foreign producer's. See Peer Bearing Co.-Changshan v. United States, 35 CIT __, __, 752 F. Supp. 2d 1353, 1372 (2011). Benchmarks, of course, become less informative the greater the difference in the levels of development of the countries from which the data derive. See, e.g., Anshan Iron & Steel Co. v. United States, 27 CIT 1234, 1248 (2003). In sum, Commerce may use benchmark data if these data prove helpful in determining whether a surrogate value is aberrational, or, to quote the statute, not "the best available information" for valuing an input. Zhejiang Native Produce & Animal By-Prods. Imp. & Exp. Grp. Co. v. United States, 32 CIT 673, 681 (2008).

949 F. Supp. 2d 1311, 1317 (Ct. Int'l Trade 2013). The Court in Blue Field further explained

that the level of deference owed to Commerce surrogate value determinations is lowered when

contradictory benchmark data are available on the record:

> Even though it enjoys some discretion in selecting the best available information, Commerce must defend its surrogate choices when confronted with data undermining the surrogate's reliability. Mittal Steel, 31 CIT at 1135, 502 F. Supp. 2d at 1308; Jinan Yipin Corp. v. United States, 35 CIT __, __, 800 F. Supp. 2d 1226, 1304–05 (2011). If the agency's surrogate prices diverge violently from credible benchmark prices, Commerce must explain why it chose to reject plaintiff's data while crediting its own. See Peer Bearing, 35 CIT at __, 752 F. Supp. 2d at 1371.

949 F. Supp. 2d at 1326.

Record evidence regarding the prices for coking and non-coking coals suggested that

something was wrong with Commerce's surrogate. The AUVs of the Malaysian import data

under HTS 2701.12 reflects the exact opposite price correlation and thus are aberrant when

comparing to (1) the prices of coking and non-coking coals reported in the U.S. Energy

Information ("EIA") Annual Coal Report 2020, (2) contract prices and spot prices for coking and

non-coking coals indicated in Coking and Non-Coking Coal Prices in 2021 and 2020, and (3) the

import data under HTS 2701.12 of Turkey and Russia. See Jilin Bright's Br. at 9–11 (citing

DJAC's First SV Comments, at Exhibits 3A(i) and 3C, PD 115–119).

While Commerce's explanations can be imperfect, "the path of Commerce's decision must be reasonably discernable," to support judicial review.  Taian Ziyang Food Co., Ltd. v. United States, 35 C.I.T. 863, 867 (Ct. Int'l. Trade 2011) (citing NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009)); see also Timken U.S. Corp. v. United States, 421 F.3d 1350, 1355 (Fed.Cir.2005) (explaining that Commerce must articulate its actions in a way that allows for "effective judicial review" and that if the necessary clarity is not provided, Commerce's actions should be vacated).

The substantial benchmarking data identified in Plaintiff Jilin Bright's brief discredited the Malaysian import data under HTS 2701.12 and demonstrated the unreliability of the surrogate BITCOAL value selected by Commerce.  Defendant's response remains conclusory as it simply rests on its conclusion without addressing the evidence weighing against its conclusion. Commerce's Final Results failed to address these points with its single conclusory statement dismissing the arguments as "without merit because the record lacks sufficient benchmark data or other price information demonstrating that the Malaysia import data reported under HTS 2701.12 are aberrantly high."  IDM at 21.

Therefore, Commerce's selection of this surrogate value lacked a basis in substantial evidence in the administrative record and must be reversed.

**C. COMMERCE'S SELECTION OF THE SURROGATE VALUE BASED UPON MALAYSIAN IMPORT DATA UNDER HTS 2706 FOR JILIN BRIGHT'S COAL TAR WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD**

The Final Results must be reversed because Commerce relied upon less specific and unreliable Malaysian import AUV under HTS 2706 to value Jilin Bright's coal tar input.  In Defendant's response brief, Defendant alleges that "Jilin Bright does not dispute that . . . HTS

2706.00 is specific to coal tar." Def.'s Resp. Br. at 25.  Here, Defendant mischaracterizes or ignores Plaintiff's argument regarding specificity.

In Plaintiff's brief, Jilin Bright acknowledged that Jilin Bright's coal tar input is properly classified under HTS 2706.  Jilin Bright's Br. at 17.  However, HTS 2706 is a basket category and is far less specific than the information made available in the report on Coal Tar and Coal Tar Pitch Market Report issued by Up Market Research ("UMR Coal Tar Report").  Id.

Commerce is granted broad discretion in the valuation of production factors in the application of statutory guidelines.  Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States, 268 F.3d 1376, 1381 (Fed. Cir. 2001) (citing Micron Tech., Inc. v. United States, 117 F.3d 1386, 1394 (Fed.Cir.1997)).  The process of establishing the foreign market value for a producer in a non-market economy country is "difficult and necessarily imprecise."  Id.  However, Commerce's discretion is not unlimited—Commerce is constrained by the objective of the antidumping statute, which aims to establish antidumping margins with the utmost accuracy.  Shakeproof, 268 F.3d at 1382 (quoting Lasko Metal Products, Inc. v. United States, 43 F.3d 1442, 1446 (Fed.Cir.1994)).  Thus, in valuing the factors of production, "the methodology used by Commerce is based on the best available information and establishes antidumping margins **as accurately as possible**."  Ningbo Dafa Chem. Fiber Co., Ltd. v. United States, 580 F.3d 1247, 1257 (Fed. Cir. 2009).

When assessing surrogate values, the significance of data specificity should be given greater weight compared to other pertinent factors (e.g., tax and duty exclusivity).  In Taian Ziyang, the Court sustained Commerce's determination regarding the valuation of garlic seed because the selected data in the final results are "**more product-specific** than the other two potential sources of data on the record," thus constituting the best available information on the

record.  35 C.I.T. at 871 (emphasis added).  One of the two sources Commerce rejected to use is

the Indian import data under HTS subheading covering "Garlic Fresh or Chilled."  Id.

Specifically,

> Commerce again dismissed both the Indian import statistics and the Agmarknet
> data as **insufficiently product-specific**, pointing to the general, non-descriptive
> nature of categories used in the Agmarknet data, and explaining that the tariff
> heading used for the Indian import statistics is "**extremely broad, encompassing
> all garlic imported into India.**"

Id. at 872 (internal citations omitted) (emphasis added).

Like Taian Ziyang, UMR Coal Tar Report provides the best available information on the

record because (1) UMR Coal Tar Report is the only source on the record that possesses

surrogate values that are most specific to Jilin Bright's coal tar, and (2) the Malaysian import

data under HTS 2706 is a basket category and not specific to the factor that Commerce is

attempting to value.

Specifically, the UMR Coal Tar Report separately reported prices based on the pitch

content—coal tar (50-65% pitch content), partially distilled tar/pitch (65-99% pitch content), and

pure pitch (100% pitch content).  Jilin Bright's Br. at 17 (citing DJAC's First SV Comments,

Part 18–19, at Exhibit 5Q, pages 68–69, PD 133).  Furthermore, the UMR Coal Tar Report

includes pricing information for coal tar pitch used in different applications, including

**chemicals**, pharmaceuticals, consumer goods, construction & roofing, and others.  Id. (citing

DJAC's First SV Comments, at Exhibit 5Q, page 68, PD 133).  By utilizing prices for chemical

applications, Commerce would obtain a value more specific to the production of activated

carbon.  Id.  In contrast, the import AUV under HTS 2706 encompasses a broader range of

products and is not tailored to chemical applications.  Id.  Accordingly, the pricing data from the

UMR Coal Tar Report is the **most** specific information on the record with which to value Jilin

Bright's coal tar.  In this case, Commerce rejected the UMR Coal Tar Report because the record did not indicate one way or another whether the prices therein were tax or duty exclusive and defaulted to its preferred import statistics despite record evidence that the import data was not product-specific.  Commerce has not explained how doing so satisfies the best available information standard thus rendering its determination as lacking a basis in substantial evidence.

Accordingly, Commerce's determination to rely on the Malaysian import data under HTS 2706, rather than UMR Coal Tar Report, to value Jilin Bright's coal tar pitch is not supported by substantial evidence and must be reversed.

## III.    CONCLUSION

For the reasons set forth above, the Final Results are not supported by substantial evidence. Jilin Bright respectfully request that this Court reverse and remand with instructions to recalculate Jilin Bright's margin while (1) determining that Jilin Bright's coal should be valued using  the Malaysia import AUV under HTS 2701.19, instead of HTS 2701.12; (2) Jilin Bright's Supplier B's coal tar pitch consumption should be valued using the UMR Coal Tar Report, rather than Malaysia import AUV under HTS 2706.

Respectfully submitted,

/s/ Jonathan M. Freed

Jonathan M. Freed
Doris Di
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  October 24, 2023                    *Counsel to Jilin Bright*